UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| Dwayne Stoutamire, | Case No. 1:11-cv-242 |
| Plaintiff, | |
| vs. | |
| Lieutenant Adkins, et al, | |
| Defendants. | |

**ORDER**

Plaintiff Dwayne Stoutamire is an inmate at an Ohio state prison. His pro se complaint, brought pursuant to 42 U.S.C. §1983, alleges in Count One that several corrections officers at the Southern Ohio Correctional Facility ("SOCF") used excessive force against him on April 16, 2010, when he was transferred from Mansfield Correctional Institution to SOCF. Counts Two and Four allege that certain medical personnel at SOCF were deliberately indifferent to his medical needs. The parties have agreed to dismiss Count Three and the individuals named there (see Doc. 84).

The Magistrate Judge has issued a Report and Recommendation (Doc. 99), recommending that a series of non-dispositive motions filed by Stoutamire be denied; the Defendants' motion to strike Stoutamire's reply to Defendant Hill's answer be granted; the motion to dismiss Defendants Lt. Adkins and Nurse Raub for lack of service of process should be granted; and the Defendants' motion for summary judgment should be granted with respect to Stoutamire's deliberate indifference claims, but denied with respect to his excessive force claim against defendants Joseph and Eshem. Stoutamire filed timely objections to the Report. (Doc. 102)

**FACTUAL BACKGROUND**

Stoutamire's complaint dated April 15, 2011, alleges that he was transferred to SOCF on April 16, 2010. During a layover at a correctional medical facility ("CMC"), he had a disagreement with a corrections officer. In his deposition, Stoutamire admitted that this "disagreement" involved a physical alteration with a corrections officer. He claims that a group of officers "roughed him up" and that photos were taken of his injuries at CMC. There is no evidence in the record supporting these statements, and he admits that he was later found guilty of an infraction of assaulting a corrections officer. (Doc. 78, Stoutamire Dep. at pp. 23-31.) When he arrived at SOCF (handcuffed and in leg restraints), he was told to wait on the bus while other arriving inmates were taken into the facility. When he was alone on the bus, he alleges that Lt. Adkins, Lt. Eshem, Lt. Joseph, and Corrections Officer Bower assaulted him, using racial epithets and telling him they would kill him if he hit another officer. When Stoutamire got up from his seat, Officer Bower said it "wasn't enough" and hit Stoutamire in the groin and spit on him.[1] He alleges the officers attacked him in retaliation for his altercation with an officer earlier that day at the medical facility. Stoutamire alleges he suffered a bleeding knot on his head, bruises on his ribs, legs, and arms, and had other injuries to his eyebrow, nose, and lips.

In Count Two, he alleges that SOCF Nurse Raub was deliberately indifferent to his serious medical needs, specifically the injuries he sustained in the altercation on the bus. Nurse Raub performed an intake evaluation and knew that he was wounded, but

---

[1] Officer Bower was never served, and he has been dismissed.

she failed to sufficiently treat those injuries. He avers that Nurse Raub told him that after the intake evaluations, she would come to his cell with proper treatment materials, but Raub never returned, and other nurses ignored his requests.

In Count Four, Stoutamire alleges that in July 2010, he was sick and suffering nausea, diarrhea, vomiting, and sores on his lips. After he reported his condition, he was seen by Nurse Hill, who weighed him and took his vitals and told him he would be seen by a doctor. Stoutamire claims he did not see a doctor, and saw Nurse Hill a second time, who again simply took his vital signs. Stoutamire claims he did not see a doctor for "months," which constituted deliberate indifference to his medical needs.

After filing his complaint, Stoutamire encountered some difficulties obtaining service on all of the defendants he named in his complaint. Some were never served; Stoutamire was given additional time in which to secure service on others; and he was granted leave to amend his complaint concerning certain individuals. The Defendants responded to Stoutamire's written discovery, and the parties reached a stipulation to dismiss Count Three. On June 19, 2012, Defendants filed a motion to dismiss Lt. Adkins and Nurse Raub for insufficient service of process. (Doc. 61) And the remaining defendants filed a motion for summary judgment in July 2012 (Doc. 82). Stoutamire also filed a number of non-dispositive motions over the past months, including motions to conduct and to compel discovery, for appointment of counsel, and a motion to stay the Defendants' summary judgment motion. All of these motions have been fully briefed and are addressed in the Magistrate Judge's Report.

**ANALYSIS**

1. <u>Motion to Dismiss Lt. Adkins and Nurse Raub</u>

-3-

Stoutamire's attempts to serve Lt. Adkins (named in Count One) and Nurse Raub (named in Count Three) have been addressed in several previous orders. Briefly summarized, the original summons was returned unexecuted as to these defendants on June 8, 2011. (Doc. 9) Lt. Adkins was apparently on extended sick leave in May/June 2011, and SOCF had no record of an employee named Nurse Raub. (Doc. 6, Highfield Declaration) Stoutamire filed a motion on September 26, 2011 noting the lack of service, and requesting assistance. (Doc. 18) The Court ordered the Attorney General to submit their last known home addresses to the Court in camera, and thereafter ordered the U.S. Marshall to serve Adkins and Raub at those addresses. The summons to Adkins was returned unexecuted and marked as "unable to forward." (Doc. 35) The Court therefore issued an order to show cause why Adkins should not be dismissed. Stoutamire responded that since Adkins was an employee at SOCF, the Defendants should be required to serve him. The summons to Nurse Raub was also returned unexecuted, stating she could not be located at the address provided. (Doc. 44) On May 29, 2012, Stoutamire asked the Court to somehow assist him in securing service on Nurse Raub. (Doc. 59)

On June 19, Defendants filed the pending motion to dismiss Adkins and Raub. (Doc. 61) Stoutamire responded that he had made every effort to secure service, but that the two defendants, state employees, were evading service. He asked the Court to disclose their home addresses so that he could attempt service himself, suggesting that the U.S. Marshall's office was not diligently performing this duty. (Doc. 76) The State then filed a declaration of Sherri Bryant, an ODRC paralegal employed at SOCF. Bryant stated that Lt. Adkins resigned from his employment on July 22, 2011, and that

-4-

ODRC has no indication that he intends to return.  Bryant also averred that Nurse Raub was not an ODRC employee, but was a contract employee from a medical staffing company.  There was no indication that Raub continued to work at SOCF or would be returning.  (Doc. 85, Bryant Declaration)

The Magistrate Judge recommended that the motion to dismiss be granted.  She noted that numerous attempts to serve Adkins and Raub at the last known addresses provided by the Attorney General were unproductive, and that Stoutamire has not explained where they might be or how he might attempt to locate them.  As the Court has no independent duty to attempt to locate an unserved defendant, further attempts at service would be futile without a valid address.  Stoutamire objects, arguing that he has been "denied access" to information about these defendants, and requests the Court to disclose their home addresses.  The State originally objected to disclosing home addresses for any employees (or former employees) for valid security reasons, which led the Court to order the addresses produced in camera.  Stoutamire is not entitled to obtain those addresses at this juncture, in view of the U.S. Marshall's repeated unsuccessful attempts at service at those same addresses.  And it is highly doubtful that Stoutamire's efforts at service would yield a different result.  Moreover, Stoutamire has not established that he has done anything to further service efforts on these individuals, other than ask the Court to find them or have their addresses disclosed.

The 120-day service period provided by Fed. R. Civ. Proc. 4(m) long ago expired.  Stoutamire has not demonstrated good cause to extend that period further, or shown other circumstances that could support a further extension of time.  The Court therefore agrees with the Magistrate Judge's recommendation to grant the motion to

dismiss Lt. Adkins and Nurse Raub.

2.  Stoutamire's Non-Dispositive Motions

The Magistrate Judge recommended that Stoutamire's motion to compel be denied, because he did not certify that he attempted to extrajudicially resolve the issues raised before filing his motion. This attempt at resolution is required by this Court's Local Rules and by the Federal Rules. Stoutamire objects, claiming that he inadvertently overlooked filing his certificate with his motion, and stating that he submitted it with his reply memorandum. Stoutamire's "certificate" (see Doc. 74) states that he served his discovery requests, and the Defendants objected. He claims that because he attempted to obtain the discovery and was met with an objection, he has satisfied his obligation to pursue good faith, extrajudicial means to resolve the dispute. Stoutamire misapprehends the meaning of Local Rule 37.1, which by its plain terms requires more than serving discovery and receiving objections. The Defendants note that they served responses to Stoutamire's various discovery requests on May 26, 2012, and produced additional documents in early June, but did not hear from Stoutamire about those responses until he filed his motion to compel on June 14.

Stoutamire also argues that the documents and information he requested are critical to his case; specifically, he wants to obtain the names of all inmates who were on the bus with him the day of the assault. He argues they could testify that he was told to stay on the bus (a fact not disputed by Defendants), and nothing was wrong with his face at that time, but that later on he had blood over all his face. He also asked for photographs of all SOCF officers named Walker, so that he could identify "Officer Walker" who was named in his original complaint. The State objected to providing

inmate names and officer photos, based on reasonable prison security concerns and Stoutamire's own disciplinary record. Even if Stoutamire had properly exhausted extrajudicial means to resolve the Defendants' discovery objections, this Court agrees with the State's articulated basis for refusing to produce this information.

The Magistrate Judge further recommended that Stoutamire's motion to take depositions of corrections officers (Doc. 68), and for the appointment of counsel (Doc. 69) be denied. She noted that Stoutamire's prison disciplinary history was very troubling, and that he had not pursued any alternate means of obtaining discovery from the corrections officers short of a deposition. She further noted that there is no constitutional right to legal representation in this type of case, and found that Stoutamire's complaint does not raise any exceptional circumstances that might support the appointment of counsel. Stoutamire has not raised specific objections to either of these recommendations, and the Court agrees with the Magistrate Judge's analysis.

Stoutamire filed two motions seeking discovery with regard to his claim against Nurse Hill. (Docs. 86, 94) Nurse Hill was substituted as the proper defendant in Count Four in lieu of Nurse Practitioner Adkins; Hill was served on June 5, 2012, and her answer was filed on June 22, the same day that the discovery period ended. After Defendants filed their motion for summary judgment on July 23, Stoutamire filed these two motions, seeking additional discovery on his deliberate indifference claim and specifically to serve Hill with interrogatories. The Magistrate Judge recommends that both of these motions be denied, because Stoutamire has not explained why he waited to seek discovery until after the discovery deadline and the filing of Defendants' dispositive motion. Stoutamire did not explain what material facts he hoped to discover

that might preclude granting summary judgment to Defendants.

Stoutamire objects, arguing that he could not serve discovery on Hill until after the Court granted his motion to substitute her as a party. He also claims that he did not know that Hill had been served until June 18, only four days before the discovery deadline. But as the Magistrate Judge noted, Stoutamire did not file a motion to extend the discovery deadline at that point, or at any point before Defendants sought summary judgment. He now contends that the only discovery he wants to pursue are interrogatories directed to Hill, which he suggests he needs before the Court rules on the summary judgment motion.

While it is true that Stoutamire could not serve interrogatories on Hill before she was joined as a party, the Court granted Stoutamire's motion to substitute Hill as a proper defendant on May 8, 2012, and the summons was issued to her on May 21. He failed to take any action with respect to seeking discovery from Hill or extending the discovery deadline until after Defendants filed their dispositive motion. Stoutamire's affidavit filed with his motion (Doc. 86) avers that he needs discovery about treatment Hill provided, and the "process" she used to determine if he needed to see a doctor. As will be discussed below regarding the merits of the claim against Hill, the pertinent portions of Stoutamire's medical records are already before the Court, as is Hill's affidavit describing the treatment she provided to Stoutamire. Stoutamire has not shown that the Magistrate Judge's recommendation to deny his motions is clearly erroneous or contrary to law, and his objections are overruled.

Finally, Defendants filed a motion to strike Stoutamire's reply to Defendant Hill's answer. (Doc. 79) The Magistrate Judge recommended granting this motion because a

reply to an answer is not authorized by the civil rules absent a court order. Stoutamire raises no specific objections on this issue, and the Court agrees with the recommendation.

3.  Defendants' Motion for Summary Judgment

The remaining individual defendants move for summary judgment on Stoutamire's excessive force and deliberate indifference claims asserted in Counts One, Two and Four of his complaint.

A.  Summary Judgment Standards

The court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An assertion of a undisputed fact must be supported by citations to particular parts of the record, including depositions, affidavits, admissions, and interrogatory answers. The party opposing a properly supported summary judgment motion "'may not rest upon the mere allegations or denials of his pleading, but ... must set forth specific facts showing that there is a genuine issue for trial.'" Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) (internal quotation omitted).

The Court is not duty bound to search the entire record in an effort to establish a lack of material facts. Guarino v. Brookfield Township Trs., 980 F.2d 399, 404 (6th Cir. 1992). Rather, the burden is on the non-moving party to "present affirmative evidence to defeat a properly supported motion for summary judgment...," Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479-80 (6th Cir. 1989), and to designate specific facts in dispute. Anderson, 477 U.S. at 250. The non-moving party "must do more than simply

show that there is some metaphysical doubt as to the material facts." Matsushita Electric Industries Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

The court construes the evidence presented in the light most favorable to the non-movant and draws all justifiable inferences in the non-movant's favor. United States v. Diebold Inc., 369 U.S. 654, 655 (1962).

  B. Stoutamire's Request for an Injunction

In Count One of his complaint alleging excessive force, Stoutamire also seeks an injunction prohibiting ODRC from housing him at SOCF at any time in the future so long as he is in ODRC's custody.[2] He seeks an order that, if in the future he is assigned to a higher security level, he be placed at the Ohio State Penitentiary (where he is now), and not at SOCF.

The Magistrate Judge noted that the Eleventh Amendment bars claims for monetary damages against the State and the individual defendants in their official capacity, but does not bar injunctive relief if a plaintiff has satisfied the requirements for an injunction, and it is sought against the proper state official. She cited Goff v. Harper, 60 F.3d 518, 520 (8th Cir. 1995), where the court cautioned that requests for injunctions in prison litigation call for the exercise of judicial restraint, in view of the "complex and intractable problems of prison administration." The Magistrate Judge noted that Stoutamire's complaint alleges that the corrections officers violated his constitutional rights when they used excessive force against him, and that Nurses Raub and Hill were deliberately indifferent to his medical needs. His request for injunctive relief would

---

[2] Neither ODRC nor its Director are named in Stoutamire's complaint.

properly be directed at ODRC officials who are in charge of inmate placement and security decisions, officials who are not parties to this lawsuit. Therefore she recommended that the request for an injunction be denied.

Stoutamire objects, alleging that he "is in fear of his life" because he filed this complaint, and that SOCF employees filed "false conduct reports" against him. He does not respond to the Magistrate Judge's observation that the individuals he named in his lawsuit are not the proper officials for purposes of the injunction he seeks. In any event, this Court would not grant such a sweeping injunction limiting ODRC's inmate security decisions based on Stoutamire's unsupported allegations that he is afraid of going back to SOCF. His request for an injunction is therefore denied.

C. <u>Excessive Force Claim</u>[3]

Lt. Jason Joseph and Lt. Edgel Eshem argue that Stoutamire's excessive force claim against them, based on the incident that he alleges occurred on the transport bus on April 16, 2010, is entirely fabricated. ODRC employee Everett Pollard submitted a declaration stating that he was working on the bus on April 16, and that there was no force used against Stoutamire, and no physical altercation of any kind on the bus that day. (Doc. 82, Exhibit A) Eshem and Joseph both submitted declarations, stating they were working on April 16, assigned to escort inmates from the transfer bus to the SOCF receiving area, and that neither of them used or witnessed the use of any force against anyone on that day. (Doc. 82, Exs. B and C)

Linnea Mahlman is the SOCF Institutional Inspector to whom Stoutamire first

---

[3] While this claim is also alleged against Lt. Adkins, the Court has granted his motion to dismiss. This discussion is therefore limited to Lt. Joseph and Lt. Eshem.

reported the incident and who conducted an investigation. After interviewing Joseph, Eshem, Adkins, Pollard, and other SOCF employees who were in the receiving area on the day Stoutamire arrived, Mahlman denied Stoutamire's grievance. In her written report, she noted that Stoutamire had been involved in an altercation at CMC prior to his arrival at SOCF, and that he had been found guilty of an infraction. Lt. Adkins explained to Mahlman that because of that incident, he had Stoutamire wait on the bus until all the other inmates had gotten off, to avoid any further incidents between Stoutamire and other inmates. Mahlman also reviewed Stoutamire's medical file, specifically Nurse Raub's "Medical Exam Report" dated April 16. Raub reported that Stoutamire told her "I got hit" in a scuffle of unknown origin, and that Stoutamire was not forthcoming with information about the facts of that incident. Raub noted he had a 2.5 cm bump on the right side of his forehead with some edema. No other negative findings or symptoms were noted. Stoutamire was offered ibuprofen but refused it, and he denied any pain, abuse or trauma. (Doc. 82, Ex. D, Mahlman Declaration and attachments) Mahlman personally interviewed Stoutamire on April 26, and by that time she saw no visible injuries on his face.

    Stoutamire contends that after the assault, he was bleeding from his head, nose and eye, and had knots and lacerations on his head. (Doc. 82, Exhibit D at p. 13, Stoutamire's grievance form.) While his subjective descriptions of his injuries have been somewhat embellished over time, the Magistrate Judge noted that the objective medical record from the date of the incident states he had a 2.5 cm (about one inch) bump on his forehead with some swelling. Given that evidence, she could not conclude that Stoutamire's version of the facts of the incident was "blatantly contradicted by the

y

record" in such a manner that summary judgment for the defendants would be proper.

The Court agrees with the Magistrate Judge's conclusion, because several reasonable inferences arise from the objective evidence, one of which could be that an officer hit Stoutamire. The trier of fact could therefore conclude that the bump was caused by use of force that was constitutionally excessive, especially given Stoutamire's undisputed statements that he was in handcuffs and leg irons on the bus. The Defendants have not filed objections to the Magistrate Judge's Report or to her recommendations on this claim. After review of the record, the Court agrees with the recommendation and denies summary judgment to Lt. Joseph and Lt. Eshem on Count One.

D.  Deliberate Indifference to Serious Medical Needs

Nurse Raub and Nurse Hill, the only defendants named in Counts Two and Four, respectively, seek judgment on Stoutamire's deliberate indifference claims. The Court concluded above that Nurse Raub will be dismissed due to lack of service; but even if she had been properly served, the Court would conclude that she is entitled to summary judgment on this claim.

Stoutamire does not dispute that Nurse Raub evaluated him on April 16 after the alleged assault. But he claims that Raub did not properly treat his serious injuries or follow up with him. He argues that Raub was deliberately indifferent to what he alleged in his complaint was a bleeding knot on his head, a "busted" nose, lip and mouth, and bruises on his ribs, legs and arms. (In his deposition, he added that he believed he had a fractured rib, a black eye, and that there was blood all over his shirt and running out of his nose.) But when Nurse Raub evaluated Stoutamire on April 16, he merely told her

that he "got hit," and would not provide any details. Raub's nursing notes do not contain any descriptions of bleeding, of bruises or knots on his face (other than the bump on his right forehead), or of a black eye, and Stoutamire specifically denied that he was in pain or was abused. He also declined Raub's offer of ibuprofen.

The record includes the affidavit of Roseanna Clagg, SOCF's Health Care Administrator, who attests to the fact that Raub's report is contained in Stoutamire's medical file, which must be kept for each inmate. While Stoutamire claims he was seriously injured in the incident, the objective medical evidence in the record belies his claim.

A deliberate indifference claim has both an objective and a subjective component. The objective prong requires evidence showing that Stoutamire had a "sufficiently serious" medical need. Comstock v. McCrary, 273 F.3d 693, 702 (6th Cir. 2001). The subjective prong requires Stoutamire to demonstrate that Nurse Raub had a culpable state of mind in denying him medical care; that is, she was aware of "facts from which the inference could be drawn that a substantial risk of serious harm existed," and that she actually drew that inference. Farmer v. Brennan, 511 U.S. 825, 837 (1994). Stoutamire may rely on circumstantial evidence of such knowledge, and "a fact-finder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." Id. But because culpability is personal, the subjective prong must be addressed for each jail official individually. Garretson v. City of Madison Heights, 407 F.3d 789, 797 (6th Cir. 2005).

The critical question is whether the evidence satisfies the objective prong of the indifference standard: did Stoutamire have a sufficiently serious medical need on April

-14-

16 when he was evaluated by Nurse Raub. His own statements on that day do not support his contention that he did. The Sixth Circuit has noted that if an indifference claim "... arises from an injury or illness so obvious that even a layperson would easily recognize the necessity for a doctor's attention ... it is sufficient to show that [the plaintiff] actually experienced the need for medical treatment, and that the need was not addressed within a reasonable time frame." Blackmore v. Kalamazoo County, 390 F.3d 890, 899-900 (6th Cir. 2004). There, the plaintiff had complained to jailers of sharp stomach pain over two days and had vomited. Jail officers gave him some antacids but did not obtain any medical care for him, and it was undisputed that a sergeant's log kept by the jail repeatedly documented his "sharp abdominal pain" over those days. After two complete days, the officers finally called for a jail nurse, who examined him and diagnosed appendicitis. The Sixth Circuit noted that the jailers were sufficiently concerned about the plaintiff that they put him in an observation cell and documented his constant complaints of severe pain before they finally called for a nurse, supporting the conclusion that they recognized his obvious need for assistance.

      Here, in contrast, Stoutamire was evaluated by Nurse Raub when he arrived at SOCF, and the records do not document the extensive injuries, such as bleeding from the nose and blood all over his shirt, that he alleges were present at that time. The one item that was documented, a one-inch bump on his forehead unaccompanied by any complaints of pain or other symptoms, was not obviously life threatening. Stoutamire has not presented any objective **medical** evidence that his condition, as he himself reported it, presented a substantial medical need to which Nurse Raub failed to adequately respond. And even if there was some reasonable inference that Nurse

Raub ignored a substantial medical need, Stoutamire has not satisfied the subjective prong of the indifference standard, requiring evidence that Nurse Raub knew of facts from which she could have inferred that Stoutamire faced a substantial risk of serious harm, and chose to disregard that risk. Other than the bump on his head, his condition upon arrival was unremarkable. There is no suggestion, for instance, that he was disoriented or unable to walk, to stand, or to adequately communicate with Raub.

Stoutamire objects to the Magistrate Judge's recommendation, claiming that a decision on this claim is "premature" because Raub has not been served with process and he has not been able to serve discovery on her. Given the facts reflected in the record before the Court concerning Stoutamire's interaction with Raub on April 16, and the discussion above concerning service, Stoutamire's objection lacks merit and is overruled.

Count Four, alleging deliberate indifference against Nurse Hill, fails for many of the same reasons discussed with respect to Count Two. Stoutamire alleges that he was sick for almost two months (July through September 2010), suffering from nausea, diarrhea, vomiting, and open sores on his lips. He claims that Nurse Hill was deliberately indifferent to these maladies because she did not refer him for a physician's visit, and simply took his vital signs and weight. The record contains Hill's affidavit, to which she attached the medical forms documenting her contact with Stoutamire in August and September 2010. On August 12, 2010, Stoutamire reported that he had a blister on his lip and constant stomach problems for about a week after he cleaned his toilet without wearing gloves. Hill visited Stoutamire four days later, on August 16. He told her that the lip blister had gone away, and she did not see any sores or blister. She

gave him ten Alamag tablets, an over-the-counter antacid, and told him to report again in 7 days if his stomach symptoms persisted or got worse.

A month later, on September 11, Stoutamire filled out another health request form, stating he was having stomach/nausea problems, "I mostly feel like throwing up and at times I go. ... Also I think I have [some]thing wrong with my lip which needs looked at [sic]." Hill visited Stoutamire on September 13, and saw nothing abnormal on his lip. Alamag was not relieving Stoutamire's stomach symptoms, so Hill referred him to an advanced level provider, as documented in the medical form she completed on September 13. That advanced level provider visit took place on October 5, when Stoutamire saw Nurse Practitioner Adkins, who gave him a trial of ninety days of Pepcid. Hill avers in her affidavit that Stoutamire did not again complain about stomach symptoms.

As with Stoutamire's claim against Nurse Raub, he has not come forward with evidence supporting the objective prong of his deliberate indifference claim against Nurse Hill. His descriptions of nausea, vomiting, diarrhea, and lip sores that Stoutamire reported on two occasions one month apart, are not the sort of illness or injury that is so objectively serious that the need for immediate medical care would be obvious. Nor has Stoutamire come forward with evidence that Nurse Hill knew or should have known that Stoutamire faced a substantial risk of serious harm due to his reported conditions, and chose to disregard that risk. The records documenting Hill's visits with and treatment given to Stoutamire lead inexorably to the opposite conclusion.

In his objections, Stoutamire argues that the Magistrate Judge failed to draw inferences in his favor. He claims that he had diarrhea for "well over three months," and

that the loss of fluid could have killed him.  (Doc. 102 at 14)  The first statement is not supported by the evidence in the record, and the latter is sheer speculation. Stoutamire has not identified any serious medical detriment that actually resulted from Hill's alleged indifference to his complaints.  He also suggests that a jury should decide if the medical records are false or fabricated, or whether the Defendants placed false statements in his file to "protect themselves" from his lawsuit.

Stoutamire is not entitled to a jury trial based on accusations and suspicions. There is no evidence before the Court raising a reasonable inference that anything in the record has been fabricated.  And the record fails to raise a reasonable inference that either Nurse Raub or Nurse Hill was deliberately indifferent to Stoutamire's complaints. The record fully supports the Magistrate Judge's conclusions and recommendations with respect to these claims.  Stoutamire has not shown that the Magistrate Judge's conclusions are clearly erroneous or contrary to law, and his objections are overruled.

## CONCLUSION

As required by 28 U.S.C. §636(b) and Federal Rule of Civil Procedure 72(b), the Court has conducted a de novo review of the record in this case and has fully considered Stoutamire's objections.  For all of the foregoing reasons, the motion to dismiss defendants Lt. Adkins and Nurse Raub for lack of service of process (Doc. 61) is GRANTED, and those defendants are dismissed without prejudice.  Stoutamire's motion to compel (Doc. 60), motion to take depositions (Doc. 68), motion for appointment of counsel (Doc. 69), motions for discovery (Docs. 86 and 94), and motion to stay summary judgment (Doc. 87), are all DENIED.

Defendants' motion for summary judgment (Doc. 82) is GRANTED on

Stoutamire's deliberate indifference claims against defendants Nurse Raub and Nurse Hill alleged in Counts Two and Four, and those defendants are dismissed with prejudice. The motion is DENIED with respect to Count One, Stoutamire's excessive force claim against defendants Lt. Joseph and Lt. Eshem, which remains for trial.

The Clerk is directed to schedule a final pre-trial conference and trial date for this matter.

SO ORDERED.

DATED: March 13, 2013

s/Sandra S. Beckwith
Sandra S. Beckwith
Senior United States District Judge