**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

DWAYNE STOUTAMIRE,                              Case No.: 1:11-cv-242

        Plaintiff,                              Judge Michael R. Barrett

   v.

LT. JOSEPH, et al.,

        Defendants.

## OPINION AND ORDER

This matter is before the Court on Defendants' Second Motion for Summary Judgment. (Doc. 143). Plaintiff, through counsel, has filed a response in opposition (Doc. 144), and Defendants have filed a reply (Doc. 145). This matter is now ripe for review.

## I.    BACKGROUND

### A.    Factual Overview

Plaintiff Dwayne Stoutamire is an inmate at an Ohio state prison. He initiated this action on April 22, 2011 by filing a pro se Complaint. (Doc. 3). Of the claims alleged in pro se Complaint, only Count One has survived. (Doc. 3; Doc. 104). Count One is a claim for excessive force in violation of the Eighth Amendment that is brought against Defendants Lt. Joseph and Lt. Eshem pursuant to 42 U.S.C. § 1983.[1] (Doc. 3). The basic supporting facts are as follow.

On April 16, 2010, Plaintiff was transferred from the Mansfield Correctional Institution to the Southern Ohio Correctional Facility ("SOCF"). (Doc. 78, p. 20). After leaving Mansfield and before arriving at SOCF, the inmates had a layover at Franklin Medical Center ("FMC") (formerly known as Correctional Medical Center). (Doc. 78, p. 21). While at FMC, Plaintiff and

---

[1] The claim also was brought against Lt. Adkins, but he already has been dismissed from the case.

other inmates were placed in cells until the bus was ready to transport them to SOCF. (Id. at 22). While in the cell, Plaintiff was involved in an altercation with a FMC officer during which Plaintiff indicated he was "roughed . . . up." (Doc. 78, p. 23). The Medical Exam Report concerning the altercation indicates that Plaintiff reported a "few bumps and scrapes" and had a visible 1.5 inch abrasion on his right shoulder. (Doc. 143-1). Following the altercation, Plaintiff was transferred on a bus to SOCF in handcuffs and shackles. (Doc. 78, pp. 35, 40-41). When the bus pulled into SOCF, several lieutenants, including Lt. Joseph and Lt. Eshem, got on the bus and told the inmates to get off the bus. (Doc, 78, p. 40). Plaintiff, however, was asked to remain on the bus. (Id.) Plaintiff contends that after the other inmates exited the bus, Lt. Joseph punched Plaintiff in the face. (Id.) Several officers then allegedly struck Plaintiff with their PR-24 batons (i.e., billy clubs) in the legs and ribs. (Id. at 41). The attack purportedly continued until after Plaintiff fell in the bus seat. (Id. at 41). Plaintiff testified that he suffered "a busted nose, a busted lip," a knot on his head, bruises all over his body, and a possible fractured rib. (Id. at 45). He also has alleged that he was bleeding. (Doc. 3, p. 6).

After the altercation, Plaintiff was escorted to the stripping area with other inmates. (Doc. 78, pp. 50-52; Doc. 141, pp. 56-57). He then was provided a medical examination. (Doc. 78, pp. 50-52; Doc. 141, pp. 56-57). According to the Medical Exam Report, Plaintiff reported a scuffle and informed the medical staff that he "got hit," but he was not forthcoming with information as to the origin. (Doc. 143-3). The objective medical findings were that Plaintiff had a visible 2.5 centimeter bump on the right side of his forehead and two edemas. (Id.) The notes indicate that Plaintiff was offered Ibuprofen but refused it. (Id.) Progress notes from

approximately 4:45 p.m. on the same date indicate that Plaintiff reported an altercation occurring before the trip, but denied abuse or trauma "during [the] trip from Manci to SOCF."  (Id.)[2]

### B.     Procedural Overview

On July 23, 2012, Defendants filed a motion for summary judgment in which they sought to dismiss Count One of the pro se Complaint, among other claims.  (Doc. 82).  At that time, the relevant evidence that was presented included the deposition of Plaintiff, the declarations of Lt. Joseph and Lt. Eshem and corresponding incident reports from them, the declaration of two non-party SOFC employees, the grievances filed by Plaintiff, and the April 16, 2010 Medical Exam Report from SOCF.  (*See* Doc. 82).  The Magistrate Judge recommended that the excessive force claim in Count One survive against Lt. Joseph and Lt. Eshem because there were conflicting accounts of what occurred at SOCF and the medical records documenting Plaintiff's head injury and edema tended to support Plaintiff's claims that, contrary to Defendant's claim of no force, some force was used against him.  (Doc. 99, p. 19).  The District Court Judge agreed with the Magistrate Judge's recommendation, reasoning that several reasonable inferences arose from the objective evidence, including the reasonable inference that an officer hit Plaintiff when he arrived at SOCF.  (Doc. 104, p. 13).  Accordingly, summary judgment was denied to Lt. Joseph and Lt. Eshem.

Subsequently, Plaintiff received appointed counsel.  (Doc. 115).  Upon appointment of counsel, the parties filed a joint motion for leave to file additional dispositive motions (Doc. 137), which was granted on January 13, 2014.  The parties also were given an opportunity to complete discovery by agreement.  The second motion for summary judgment currently before the Court was filed on April 14, 2014 and became ripe for review on May 20, 2014.

## II.     LEGAL STANDARD

---

[2] Presumably, "Manci" refers to Mansfield Correctional Institution.

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" only if its resolution affects the outcome of the suit. *Id.*

On summary judgment, a court must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). The moving party has the burden of showing an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

Once the moving party has met its burden of production, the nonmoving party cannot rest on his pleadings, but must present significant probative evidence in support of his complaint to defeat the motion for summary judgment. *Anderson*, 477 U.S. at 249. "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Id.* at 252. Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

## III. <u>ANALYSIS</u>

As they did in the first motion for summary judgment, Lt. Joseph and Lt. Eshem argue that Plaintiff's excessive force claim against them is entirely fabricated. The bases for their argument are (1) Lt. Joseph and Lt. Eshem testified they have no recollection of Plaintiff or the events in question; (2) Lt. Joseph and Lt. Eshem testified that they always document their use of

4

force and that they generally use force consistent with the force continuum that ranges from pepper-spray to the use of the billy club; (3) Plaintiff did not testify that Lt. Eshem took any action towards him and Lt. Eshem testified that lieutenants never go on the bus; and (4) Plaintiff's medical records do not support his claims. (Docs. 143, 145).

The Eighth Amendment prohibition against cruel and unusual punishment governs an inmate's claim of excessive force. *Pelfrey v. Chambers*, 43 F.3d 1034, 1036-37 (6th Cir. 1995); *Cornwell v. Dahlberg*, 963 F.2d 912, 917-18 (6th Cir. 1992). To state a claim for excessive force, the inmate must establish that the force was applied maliciously and sadistically to cause harm, rather than in a good faith effort to maintain or restore discipline. *Hudson v. McMillian*, 501 U.S. 1, 7 (1992); *Pelfrey*, 43 F.3d at 1037; *Caldwell v. Moore*, 968 F.2d 595, 599-601 (6th Cir. 1992). In making this determination, a court must consider the reasons for the use of force, the type and amount of force used, and the extent of the injury inflicted. *See Hudson*, 501 U.S. at 7; *Whitley v. Albers*, 475 U.S. 312, 320-22 (1986); *Moore v. Holbrook*, 2 F.3d 697, 700 (6th Cir. 1993).

An inmate may suffer a violation of his Eighth Amendment rights even though he did not suffer a serious injury at the hands of corrections officers. *Hudson*, 503 U.S. at 9-10. The extent of the injury suffered by an inmate is one factor that may suggest "whether the use of force could plausibly have been thought necessary" in a particular situation, "or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." *Whitley*, 475 U.S. at 321. The Eighth Amendment does not prohibit a *de minimis* use of force "provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" *Hudson*, 503 U.S. at 10. What constitutes a *de minimis* use of force depends upon the circumstances of each case. "[T]he core judicial inquiry is . . . whether force

was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Id.* at 7. For example, a guard who needlessly beats a handcuffed, submissive prisoner causing bruises, swelling, loosened teeth, and a cracked dental plate inflicts injuries that are more than *de minimis* for Eighth Amendment purposes. *Id.* at 10.

Having reviewed the arguments and evidence presented, the Court concludes that there continue to exist genuine issues of material fact that preclude the grant of summary judgment for Lt. Joseph and Lt. Eshem on Plaintiff's excessive force claim.

There is plainly conflicting testimony as to whether force was used by Defendants against Plaintiff on April 16, 2010. According to Plaintiff's testimony, Lt. Joseph and Lt. Eshem used force against him without provocation when he first arrived at SOCF. In contrast, the testimony of Lt. Joseph and Lt. Eshem indicates that no force whatsoever was used against Plaintiff when he first arrived at SOCF. Although Lt. Joseph and Lt. Eshem insist that they do not recall the events and would have documented any use of force, that argument lends itself to a credibility determination that is not properly made on summary judgment.

As for whether Lt. Eshem was on the bus in a position to use force against Plaintiff, the evidence again is conflicting. While Lt. Eshem denies being on the bus, Plaintiff's testimony suggests that Lt. Eshem was involved in the actions of hitting, punching and/or using a billy club on Plaintiff when he arrived at SOCF. Plaintiff testified that Lt. Eshem was on the bus, and that "they" started punching him and hitting him with billy clubs. (Doc. 78, p. 40). That testimony is consistent with the prior affidavit Plaintiff submitted in opposition to the first motion for summary judgment, in which he specifically stated that "Lt. Eshem joined in on this assault by hitting me with [his] night sticks on my ribs, arms and legs." (Doc. 89, p. 24).

The medical records at issue also are subject to multiple reasonable interpretations, one of which would support Plaintiff's contention that Defendants used force against him. The objective observations noted on the medical records indicate that Plaintiff had noticeable injuries upon his arrival at SOCF (i.e., a 2.5 centimeter bump on the right side of his head and two edemas) that were not observed at FMC. The SOCF medical records further indicate that Plaintiff was not forthcoming about the origin of his injuries. Contrary to Defendants' argument, the progress notes from SOCF do not plainly preclude an inference that the injuries were sustained by Plaintiff while at SOCF. The progress notes indeed are less than clear as to exactly what Plaintiff reported. Construing the evidence in favor of Plaintiff, the progress notes do not indicate Plaintiff reported any use of force at FMC or denied any use of force once he arrived at SOCF. Instead, the progress notes suggest that Plaintiff reported a use of force before the trip from Mansfield to SOCF rather than at FMC during the transfer process. Further, the notation that Plaintiff denied abuse/trauma "during" the trip from Mansfield to SOCF also could be interpreted as a denial that any use of force occurred at any time during the transfer process, including at FMC, but not as a denial as to the use of force once he arrived at SOCF. Viewed as a whole, the evidence could reasonably support a finding that Plaintiff was reluctant to provide information about the events giving rise to his injuries and did not specifically deny that any use of force occurred upon his arrival at SOCF.

There also exist genuine issues of material fact as to the type and extent of force used and the extent of Plaintiff's injuries. Defendants appear to contend that a billy club could not have been used to inflict the injuries on Plaintiff because Plaintiff's injuries are not consistent with those that would be created by a billy club, and a billy club is at the end of the use-of-force continuum. Neither argument forecloses the possibility that Plaintiff was treated and injured in

the manner he described. While the medical records do not document injuries other than the injury to Plaintiff's head, Plaintiff testified that he also was hit in the legs and ribs by the lieutenants. (Doc. 78, pp. 41, 45, 62). Plaintiff further testified that he informed the nurse at SOCF that he sustained other less visible injuries as a result of the alleged attack at SOCF. (Id. at 59-60). According to Plaintiff, the nurse indicated she would visit Plaintiff in his cell at a later time to examine him, but she never did so. (Id. at 60-61, 63). The lack of documentation of his other injuries that may have not been as readily visible as those sustained to his head thus does not conclusively demonstrate that no such injuries were sustained. Indeed, the Court gives some credence to the affidavit of Roberto Wynn, an inmate who has sworn that he saw Plaintiff in the stripping cell with injuries to his face, a knot on his forehead, a cut over his eye, "fresh" blood, and dirty clothes. (Doc. 144-2, ¶ 7).[3] Those conflicts are properly within the province of a jury.

Lt. Joseph's testimony that he generally proceeds along the force continuum with the billy club being the last option on that continuum actually may support Plaintiff's claim. There is no argument presented that Plaintiff provoked the use of any force upon him at SOCF. If a jury determined that Plaintiff was punched and hit with a billy club by Lt. Joseph or Lt. Eshem and there is no evidence that any other level of force along the continuum was used, then a jury reasonably could consider the use of the immediate resort to such force as evidence that excessive force was used on Plaintiff.

Viewing the facts and evidence in the light most favorable to Plaintiff, a jury could reasonably infer that Plaintiff received his injuries as a result of Defendants' use of force which was intended to inflict harm on Plaintiff in retaliation for Plaintiff's prior conflict with a FMC correctional officer. A fair-minded jury also could return a verdict for Plaintiff on his Eighth

---

[3] Although Defendants take issue with the fact that the nurse did note observations of "blood" on Plaintiff, the testimony of Plaintiff indicates that he was taken to the stripping area first and that he had taken his shirt off and wiped his blood with it such that the nurse may not have observed it. (Doc. 78, pp. 40, 62).

Amendment claim considering the reasons for Defendants' use of force, the type and amount of the force used, and the extent of the injuries inflicted.  *Whitley,* 475 U.S. at 320-22; *Moore*, 2 F.3d at 700; *Anderson*, 477 U.S. at 252.[4]

## IV.   <u>CONCLUSION</u>

Consistent with the foregoing, Defendants' Motion for Summary Judgment (Doc. 143) is **DENIED**.

**IT IS SO ORDERED.**

s/Michael R. Barrett
Michael R. Barrett, Judge
United States District Court

---

[4] Defendants further argue in their reply brief that even if Plaintiff has satisfied his burden, they still are entitled to qualified immunity because Plaintiff must show that the right violated was clearly established.  (Doc. 145, p. 5).  In particular, they argue that the small bump did not demonstrate Plaintiff was subject to the "gratuitous" violence necessary to sustain a claim.  This argument, however, need not be considered as it was raised for the first time in the reply brief.  *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008) ("Raising the issue for the first time in a reply brief does not suffice; reply briefs reply to arguments made in the response brief – they do not provide the moving party with a new opportunity to present yet another issue for the court's consideration.").  In any event, the caselaw, evidence and analysis set forth above indicate that summary judgment should be denied on this basis as well, particularly considering that genuine issues of material fact exist as to the amount and type of force used and the extent of the injuries inflicted.